**Elizabeth DOLE, Secretary of Labor, Petitioner,**

v.

**ARCO CHEMICAL COMPANY and Occupational Safety and Health Review Commission, Respondents.**

**No. 90–3213.**

United States Court of Appeals, Third Circuit.

Argued Oct. 30, 1990.

Decided Dec. 14, 1990.

Robert P. Davis, Sol. of Labor, Cynthia L. Attwood, Ass'n Sol., Ann Rosenthal, Laura V. Fargas (argued), U.S. Dept. of Labor, Washington, D.C., for petitioner.

Thomas M. Melo, Gregory B. Richards (argued), Bracewell & Patterson, Houston, Tex., for respondent Arco Chemical Co.

Before MANSMANN, COWEN and ALITO, Circuit Judges.

OPINION OF THE COURT

MANSMANN, Circuit Judge.

This case comes to us on a petition for review filed by the Secretary of Labor pursuant to Section 11(b) of the Occupational Safety and Health Act of 1970 ("the Act"), 29 U.S.C. § 660(b) (1977). The Secretary asks that we review an order of the Occupational Safety and Health Review Commission which finalized the decision of an administrative law judge denying the Secretary's motion to amend the complaint and which granted summary judgment in favor of Arco Chemical Company, Inc. Because

we conclude that the administrative law judge abused his discretion in failing to allow the Secretary to amend her complaint, we will grant the petition for review and will remand this matter to the Commission for further proceedings consistent with this opinion.

## I.

Although the parties controvert some of the historical facts, for the purposes of this discussion, we rely on the following facts generally agreed to by both parties as set forth in their briefs. On September 13, 1988, Arco employees conducted a fire control training exercise for a group of newly-hired employees. This exercise, which was conducted at the facilities of the Lyondell Petrochemical Company in Houston, Texas, involved the use of portable fire extinguishers owned by Lyondell Petrochemical Company.[1]

Cherry Briggs, an Arco employee, was killed when the shell of a dry chemical fire extinguisher exploded as she attempted to charge it. Arco notified the Occupational Safety and Health Administration immediately following the accident. On the following day, an OSHA compliance officer inspected the site and the damaged extinguisher.

On October 5, 1988 OSHA cited Arco for serious violations of three OSHA regulations relating to required annual and monthly inspection and hydrostatic testing of portable fire extinguishers, 29 C.F.R. §§ 1910.157(e)(2), 1910.157(e)(3), and 1910.157(f)(4) (1989).[2] Arco contested the citation and the Secretary filed a complaint with the Commission. The allegations of the complaint differed somewhat from those in the original citation. In recognition of the fact that Arco did not own or control the portable fire extinguisher at issue, the complaint deleted allegations based upon the monthly and annual inspection requirements set forth in Sections 1910.157(e)(2) and (e)(3). The complaint retained the allegation based upon hydrostatic testing as set forth in Section 1910.157(f)(4) and added an allegation based upon the general responsibility of the employer with regard to inspection and maintenance of portable fire extinguishers as set forth in Section 1910.157(e)(1).[3] The then maximum penalty of $640.00 for each of the two violations was proposed.

Answering the complaint, Arco denied liability and raised defenses including failure to state a claim. A hearing was scheduled for May 4, 1989.

On April 17, 1989 the Secretary requested a continuance in order to conduct discovery. The continuance was granted and the parties engaged in limited discovery. On September 18, 1989, Arco filed motions to stay the proceedings and discovery and,

---

1. At the time, Arco and Lyondell were subsidiaries of Atlantic Richfield Company. These companies, which operated under a single administration until 1989, occupied adjacent plants. Lyondell's facilities and equipment were used during the course of the training exercise pursuant to a Services Agreement between Arco and Lyondell. A case against Lyondell arising from the same incident is now pending before the Commission. *See Secretary of Labor v. Lyondell Petrochemical Corp.,* OSHRC Docket No. 88–2567.

2. The relevant regulations provide in pertinent part:

    § 1910.157 *Portable fire extinguishers*

    *       *       *       *       *       *

    (e) *Inspection, maintenance and testing*

    *       *       *       *       *       *

    (2) Portable extinguishers or hoses used in lieu thereof under paragraph (d)(3) of this section shall be visually inspected monthly.

    (3) The employer shall assure that portable fire extinguishers are subjected to an annual maintenance check. Stoud pressure extinguishers do not require an internal examination. The employer shall record the annual maintenance date and retain this record for one year after the last entry or the life of the shell, whichever is less. The record shall be available to the Assistant Secretary upon request.
    (f) *Hydrostatic testing*

    *       *       *       *       *       *

    (4) The employer shall assure that portable fire extinguishers are hydrostatically tested whenever they show new evidence of corrosion or mechanical injury, except under conditions listed in paragraphs (f)(2)(i)–(v) of this section.

3. 29 C.F.R. § 1910.157(e)(1) states that
    The employer shall be responsible for the inspection, maintenance and testing of all portable fire extinguishers in the workplace.

at the same time, moved for summary judgment. In its summary judgment motion, Arco argued that reliance upon the general standard of Section 1910.157(e)(1) was inappropriate in view of the specific standards relating to maintenance and testing set forth in (e)(2) and (e)(3) and that the hydrostatic testing provisions of (f)(4) were inapplicable in that Arco was unable to conduct hydrostatic tests of fire extinguishers which it did not own or control. Discovery and other proceedings were stayed pending decision on the motion for summary judgment.

The Secretary then sought leave to amend the complaint, to include an alleged violation of Section 1910.156(d) which addresses fire fighting equipment made available to employees functioning as fire brigades.[4] The amended complaint would also have added an assertion that the general requirements of (e)(1) imposed a duty upon Arco to "remove" defective Lyondell fire extinguishers from service and would have deleted the alleged violation of the hydrostatic testing provisions of Section 1910.157(f)(4).

Arco opposed the Secretary's motion to amend, characterizing it as a "dilatory attempt to avoid summary judgment." Arco also claimed undue delay in the filing of the motion and argued that it would be prejudiced by "the allegation of new facts and legal theories."

The motion to amend was denied on December 7, 1989 and, on December 12, 1989, Arco's motion for summary judgment was granted. In ruling on these motions, the administrative law judge did not articulate the reasoning underlying his decisions, but commented only that Arco's arguments were "well taken." A petition by the Secretary for discretionary review by the full Commission was not granted and the rulings on the motion to amend and the motion for summary judgment became final Commission orders by operation of law.[5] The Secretary then filed this timely petition for review.

## II.

In the petition, the Secretary focuses primarily upon the denial of the motion to amend the complaint. While the grant of summary judgment is also challenged, we are not asked to reach the merits of that motion. It is the Secretary's position that the denial of the motion to amend was error and that any motion for summary judgment should include an evaluation of the claims set forth in the amended complaint. We agree that the motion to amend should have been granted and that the merits of any summary judgment motion should be addressed first by the Commission. We confine our analysis, therefore, to those issues raised by the denial of the Secretary's motion to amend.

At the outset, we note that the rule governing amendment in Commission proceedings is set forth at 29 C.F.R. § 2200.35(f)(3) (1989). This regulation establishes the applicability of Fed.R.Civ.P. 15(a), which embodies a liberal approach to amendment and provides that, following an initial amendment by right prior to the filing of a responsive pleading, a party is entitled to amend the complaint, even over the objection of the opposing party, "by leave of court." The rule specifies that "leave shall be freely given when justice so requires." We review the Commission's order denying a motion to amend for abuse of discretion. *Cornell & Co., Inc. v. OSHRC,* 573 F.2d 820, 823 (3d Cir.1978).

In evaluating challenges to the denial of opportunity to amend we have held consistently that leave to amend should be granted freely. *Heyl & Patterson Int'l, Inc. v.*

---

4. Section 1910.156(d) reads in full as follows:
   § 1910.156 *Fire brigades*
   (d) *Fire fighting equipment.* The employer shall maintain and inspect, at least annually, fire fighting equipment to assure the safe operational condition of the equipment. Portable fire extinguishers and respirators shall be inspected at least monthly. Fire fighting equipment that is in damaged or unserviceable condition shall be removed from service and replaced.

5. The Secretary states that at the time that the petition for discretionary review was filed, the Commission had no sitting members and the petition could not have been granted.

*F.D. Rich Housing,* 663 F.2d 419, 425 (3d Cir.1981). *See also, Bechtel v. Robinson,* 886 F.2d 644 (3d Cir.1989) (court should use "strong liberality" in considering whether to grant leave to amend). This approach ensures that a particular claim will be decided on the merits rather than on technicalities. *See* Wright, Miller and Kane, *Federal Practice and Procedure,* Vol. 6, § 1471 at 505 (2d ed. 1990).

The policy favoring liberal amendment of pleadings is not, however, unbounded. In *Foman,* the Supreme Court delineated factors which may weigh against amendment. These include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Arco argues that liberality is not warranted in this case. Opposing the Secretary's proposed amendment, Arco seeks to position itself within the ambit of those cases where amendment has been denied. Arco argues first that the Secretary delayed unduly in seeking to amend her complaint. As Arco writes in its brief, "Dilatory motive and undue, unexplained delay are ... precisely the factors on which [Arco] relied in its Opposition to [the Secretary's] Motion to Amend." Arco also claims that it would suffer prejudice if amendment were allowed. This prejudice argument has two prongs. First, Arco claims that allowing revision of the theory underlying the general (e)(1) claim to encompass *removal* of fire extinguishers in addition to inspection, maintenance and testing would require it to make a further motion for summary judgment. Second, Arco claims prejudice in that the amended allegation that Arco trainees acted as a fire brigade within the meaning of § 1910.156(d) would necessitate additional discovery.

Arco argues that the proposed amendments are based upon information long-available to the Secretary. Arco notes that the new theories are advanced "more than fourteen months after the inspection, and well beyond the six month limitation period for issuance of citations." It cites a number of cases for the proposition that where—as it asserts is the case here—there has been a lack of diligence in seeking amendment, the burden shifts to the Secretary to demonstrate that the delay resulted from oversight, inadvertence, or excusable neglect. *See, e.g. Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 933 (1st Cir.1983) (where considerable time has elapsed between filing of the complaint and the motion to amend, movant is required to establish a valid reason for delay or neglect); and *Carroll v. Pittsburgh Steel Co.,* 103 F.Supp. 788, 789 (W.D.Pa.1952) (where motion to amend followed entry of judgment, failure to demonstrate that delay resulted from excusable oversight supported denial of motion).

The Secretary responds that there has been no undue delay in the filing of the motion to amend. The initial complaint was filed on February 27, 1989. From April, 1989 to September 18, 1989, the parties were engaged in settlement negotiations and discovery.[6] On November 17, 1989, 8½ months into the litigation,[7] the Secretary filed her motion to amend the complaint.

We do not believe that the course of this litigation supports the conclusion that there was undue delay in the filing of the Secretary's motion to amend. This case presents unusual third party issues and has given rise to some legitimate questions as to which regulations govern in this unique factual situation. In order to ensure that the alleged violations are specific as to Arco, the Secretary, in seeking to amend,

---

6. Discovery consisted of the exchange of one set of interrogatories. The Secretary notes that the answers received consisted primarily of objections and that any opportunity to develop the factual underpinnings of her case was arrested when Arco moved to stay discovery and for summary judgment at the same time that it filed the responses to interrogatories.

7. Arco's fourteen month calculation begins with the issuance of the original citation rather than with the filing of the complaint.

has attempted to refine the theory upon which liability might be based. The proposed amendment implicates few, if any, new facts. Based on the procedural history and the underlying facts of this case, we do not believe that the record reflects undue delay. Furthermore, we find no support for Arco's claim of undue delay in the cases which it cites.[8]

We turn now to those *other* factors which may militate against allowing a party the opportunity to amend. As we have noted, these include bad faith, repeated failure to cure a deficiency by amendments previously allowed, the futility of amendment or substantial or undue prejudice to the opposing party. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230. Our review of the record establishes that the only one of these factors which might reasonably be invoked to defeat the Secretary's right to amend the complaint is possible prejudice to Arco.

We have held that "'prejudice to the nonmoving party is the touchstone for the denial of the amendment.'" *Bechtel,* 886 F.2d at 652, quoting *Cornell & Co., Inc., v. OSHRC,* 573 F.2d 820, 823 (3d Cir.1978). A mere claim of prejudice is not sufficient; there must be some showing that Arco "was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely." *Id.,* quoting *Heyl & Patterson Int'l,* 663 F.2d at 426.

We do not believe that Arco has established prejudice sufficient to defeat the Secretary's right to amend. Arco's claims of prejudice rest solely on the need to redraft its motion for summary judgment and the possibility that some additional discovery will be required. The mere fact that a summary judgment motion will need to be revised does not, without more, establish that prejudice will result from permitting the plaintiff to amend. Amendment may be permitted at any point during the course of litigation. *See Foman v. Davis,* 371 U.S. at 181–182, 83 S.Ct. at 229–230 ("in the interest of justice," leave to amend may be necessary even at post-judgment stage). Furthermore, the need for additional discovery does not conclusively establish prejudice. *See, e.g., Butcher & Singer v. Kellam,* 105 F.R.D. 450, 452–453 (D.Del.1984) (need for further discovery, absent explanation of burdens which this would impose, did not constitute prejudice sufficient to outweigh amendment).

In order to make the required showing of prejudice, regardless of the stage of the proceedings, Arco is required to demonstrate that its ability to present its case would be seriously impaired were amendment allowed. *Bechtel,* 886 F.2d at 652; *Heyl & Patterson Int'l,* 663 F.2d at 426. There is nothing in the record before us to suggest that the Secretary's proposed amendment will work such a hardship. In our view, the Secretary's proposed amended complaint is based upon facts and circumstances which do not differ significantly from those underlying the Secretary's original allegations. The evidence required to meet these new allegations is substantially similar to that which was originally required. In the context of an action under OSHA, "when an amendment puts no different facts in issue than did the original citation, reference to an additional legal standard is not prejudicial." *Donovan v. Royal Logging Co.,* 645 F.2d 822, 827 (9th Cir.1981).

In sum, we find nothing in the record before us to support the proposition that the F.R.Civ.P. 15(a) policy favoring liberal amendment should be abandoned. We conclude, therefore, that the administrative law judge abused his discretion in denying the Secretary's motion to amend her complaint and that any motion for summary judgment which may now be filed by Arco should be directed to those issues raised by

8. *See, e.g., Tenneco Resins, Inc. v. Reeves Bros., Inc.,* 752 F.2d 630 (Fed.Cir.1985) (litigation was 12 years old and basis of amended pleading had been known for eight years prior to filing); *Chitimacha Tribe of La. v. Harry L. Laws Co.,* 690 F.2d 1157, 1164 (5th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983) (motion to amend was filed two years and three months after the original complaint and was based on information available prior to the first amendment).

the amendment.[9] The principles of judicial economy and our own jurisprudence are best served by having the merits of such a motion evaluated initially by the Commission.

### III.

For the foregoing reasons, we will grant the Secretary's petition for review and will remand this matter to the Commission for further proceedings consistent with this opinion.

---

**9.** This conclusion is buttressed by the fact that, in denying the motion to amend, the administrative law judge did not detail the grounds upon which he relied in so ruling. His conclusory statement that Arco's points were "well taken" bring this case close to the Supreme Court's pronouncement in *Foman* that "outright refusal to grant ... leave [to amend] without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the rules." 371 U.S. at 182, 83 S.Ct. at 230.